U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUN -8 PM 3: 17

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JLD PROPERTIES OF ST. ALBANS, LLC, )<br>Plaintiff )<br>)<br>v. )<br>)<br>PATRIOT INSURANCE COMPANY, )<br>Defendant ) | Case No. 2:20-cv-134 |

## AMENDED COMPLAINT

### Nature of Action

1.  This is an action to establish insurance coverage for a building damaged by a sudden wind storm.

### Parties

2.  Plaintiff JLD Properties of St. Albans, LLC ("JLD") is a Vermont limited liability company. Its members are Jeffrey and Charles Davis, who are citizens of Vermont and Connecticut respectively.

3.  Defendant Patriot Insurance Company is a Maine corporation with its principal place of business in Maine. It is a citizen of Maine.

### Jurisdiction and Venue

4.  This Court has jurisdiction pursuant to 28 U.S.C. §1332. There is a complete diversity of citizenship and the amount in controversy exceeds $75,000. In cases involving limited liability corporations, the citizenship of limited liability companies is determined based on the state where its members are citizens.

gravel &
shea
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

5.  This Court may enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

6.  Venue lies in this jurisdictional district pursuant to 28 U.S.C. § 1391(b).

### Facts

7.  JLD purchased an insurance policy from Patriot Insurance.

8.  The insurance policy provides coverage for wind damage.

9.  In October 2017, a large wind storm ripped through St. Albans.

10. The wind storm caused damage to JLD's building located in St. Albans, Vermont. The damage included lifting of the roof and creating openings in the roof. Between October 30, 2017 and November 4, 2017, there was substantial rainfall in St. Albans of 1.5 inches.

11. Patriot initially accepted coverage for the wind damages. Patriot relied on that determination of coverage to its detriment.

12. As the costs of the repairs increased, Patriot reversed its position and denied coverage. Patriot has refused to pay for additional repairs required because of the wind damage.

13. On January 10, 2020 and in subsequent communications, JLD requested coverage under the Insurance Policy.

14. The letter declining to provide coverage relied on a number of inaccurate factual statements. First, it asserted that damage to the building had occurred in 2013. The building was repointed in 2014 before the incident. Photographic evidence shows that the building was in good condition at the time that the damage occurred in 2017.

15. The supplemental letter denying coverage also had inaccurate statements. For example, Mr. Hill conducted an investigation relied on in the letter. Mr. Hill found that there was significant damage to the roof on the northwest corner. Mr. Hill neglects to mention that roof at



the eastern edge of the building was lifted and damaged. JLD has visual evidence showing the damage at the eastern end of the roof.

16. JLD's insurance broker sent a June 2020 email detailing all of the faults with the investigation. The letter included visual evidence on several of the issues in dispute. Despite receiving this letter, Patriot Insurance did not request any additional information or conduct a new investigation.

## Supplemental Facts

17. JLD filed its complaint on September 9, 2020.

18. After JLD filed its complaint, Patriot Insurance sent a third, subsequent coverage position letter.

19. This coverage letter was written by Patriot's outside counsel.

20. In that letter, Patriot asserted new defenses for the first time, including a suit limitation clause. Those defenses had not been mentioned in the previous coverage position letters.

21. Patriot's assertion of new defenses is part of a standard strategy to increase the costs of obtaining coverage so that rational economic actors will not pursue coverage to which they are entitled because the costs of obtaining that coverage exceeds the amount of damages available under the policy.

22. This standard strategy allows Patriot to make profits that it is not otherwise entitled to the detriment of its insureds.

23. The September 9, 2020 letter did not address the issues identified in the June 2020 email, which detailed all of the faults with the investigation.

24. That September 9, 2020 letter also did not provide any of the missing information identified in the June 2020 email or correct any of the obvious factual flaws.

25. JLD had relied on the coverage positions taken by the Patriot. That reliance included spending valuable staff time investigating the claim and money spent on attorney's fees in evaluating the claims, communicating with the insurance company, and drafting the complaint.

<u>Facts Related to Equitable Estoppel and Equitable Tolling</u>

26. Patriot Insurance sent an adjuster, Alex Hill of Colonial Adjustment to investigate the cause of the damage in 2017.

27. An agent for JLD met Mr. Hill at the building and provided him full access to the building including the roof of the building.

28. JLD fully cooperated with the investigation. It forwarded information about various quotes for the repairs to Patriot and was completely transparent about those quotes.

29. After completing his investigation, Mr. Hill provided a report to Patriot Insurance. Patriot Insurance did not provide a copy of the report to JLD.

30. The investigation determined that the wind had lifted and damaged the membrane roofing in the northwest corner of the roof. This conclusion was obvious based on visual inspection of the scene of damaged roof. Patriot knew the true facts of the situation because of its onsite investigation.

31. Patriot accepted coverage and issued payments for the temporary repairs and permanent replacement of the entire roof including the entire roof membrane.



32. In a July 13, 2018 letter, Joe Bernard, a Senior Claims Representative from Patriot Insurance, stated that "After a covered loss such as yours, your policy provides that we pay for the current repair/replacement value of your property, less depreciation for wear and tear."

33. The July 2018 letter contained no reservation of rights.

34. By its letter, Patriot intended for JLD to rely on its representations concerning coverage. Patriot did not want to be sued for a declaratory judgment when it agreed that the policy covered the 2017 wind storm.

35. JLD relied on the coverage decision and that fact that Patriot had determined factually that the cause of the damage was the wind storm when determining whether it should sue Patriot. JLD's reliance on Patriot's decision was reasonable given that Patriot had sent its own independent investigator and the conclusions of the investigator appeared to be reasonable. JLD knew that this investigation occurred and in fact facilitated the investigation. In addition, JLD had received a letter from one of Patriot's claims representatives stating Patriot's position on the policy and that it was a "covered loss" under the policy.

36. JLD had the right to believe that Patriot intended for JLD to rely on it because Patriot conducted its own factual investigation, stated its coverage positions in writing, and Patriot actually paid its claim. JLD had no obligation to file a suit for declaratory judgment because our justice system does not allow a party to file an action when the other party does not dispute the legal issues involved in the case. There was no active case or controversy.

37. JLD had no reason to sue Patriot because Patriot had agreed to cover the wind damage.



38.     JLD also had no reason to sue because the additional damage discovered in 2020 was latent and not easily detected. Once it discovered the damage, JLD promptly reported the damage to Patriot.

39.     Despite having already concluded that there was coverage, Patriot decided to conduct a new investigation into the damage in 2020. JLD believed that the engineer would reach the same conclusion as the previous adjuster.

40.     Rather than use the same adjuster, Patriot hired a new engineer to investigate, Ms. Evans.

41.     Ms. Evans made several mistakes and misstated certain facts.

42.     Ms. Evans falsely concluded that the previous holes in the roof had no role in the damage. She made this conclusion even though she had video evidence showing that one of the holes in the roof had been exactly where the new damage had occurred.

43.     Ms. Evans could not have done a proper investigation because she did not use contemporary evidence from 2017 to examine the true cause of the issue with the wall even when that evidence was made available to her.

44.     Ms. Evans's conclusions were contrary to the conclusions of Mr. Hill and were based on less evidence and erroneous evidence.

45.     After Ms. Evans issued her conclusions, JLD, through its insurance agent, Scott Boardman, pointed out these errors to Patriot in a June 2020 email.

46.     In particular, Mr. Boardman provided photographic and video evidence that showed that the damage to the East wall was due to an opening on the roof that existed at the time of the wind storm in 2017. The video also showed that the entire roof membrane was flapping in the wind in 2017, not providing the protection necessary to protect the wall.

gravel &
shea
A PROFESSIONAL CORPORATION
76 St Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 6 -

47. Patriot contended that the damage to the East Wall had been done prior to the wind storm in 2017. Ms. Evans stated that only the South Wall had been repointed in 2015 and thus any damage to the East Wall must have been before 2017. That conclusion was erroneous. Mr. Boardman provided additional evidence showing that Ms. Evans's conclusions were incorrect. Mr. Boardman provided an invoice showing that the East Wall had in fact been repointed, which showed that the damage to the East Wall occurred after 2015.

48. Ms. Evans also supported her conclusion that the wind storm had not caused the damage because stating that the roof was immediately fixed after the storm. That position was erroneous. Mr. Boardman provided evidence about the availability of roofers after the 2017 wind storm and the meteorological conditions that showed that the wind storm did in fact cause the damage.

49. Ms. Evans also attributed certain statements to a witness that the witness directly refuted in writing. JLD also provided evidence that Ms. Evans conducted her interviews with a pre-existing bias toward not finding coverage, rather than a neutral perspective.

50. Ms. Evans also mislabeled photos, which allegedly showed that South Wall only had damage. The mislabeled photos showed water damage from a leak in the roof. The only problem was that these photos actually showed water damage from the East Wall.

51. Despite pointing these errors out, Patriot refused to correct his coverage opinion.

## COUNT I
### Declaratory Judgment – Breach of Contract

52. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

53. An actual and justiciable controversy has arisen between JLD and Patriot Insurance.


gravel &
shea

76 St Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

54. JLD therefore seeks a declaration that coverage exists for damage to its property under the insurance policy issued by Patriot Insurance.

## COUNT II
### Vermont Consumer Protection Act

55. The biased investigation and claims handling procedures violate the VCFA's bar on "unfair practices."

56. Patriot has fallen below the standards set forth in Vermont law for investigating claims. 8 V.S.A. § 4724. In particular, Patriot's investigation failed by:

> (A) misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue;
>
> (B) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (C) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> (D) refusing to pay claims without conducting a reasonable investigation based upon all available information.

8 V.S.A. § 4724(9)(A) & (B).

57. The anti-concurrent clause in JLD's insurance policy is itself an unfair practice. It creates the appearance of coverage, but its actual implementation results in the denial of coverage in a number of different cases where coverage should exist.

## COUNT III
### Vermont Consumer Protection Act

58. The assertion of additional defenses after its original coverage letters and after JLD filed its complaint violates the VCFA's bar on "unfair practices."


gravel & shea
A PROFESSIONAL CORPORATION
76 St Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 8 -

59. Patriot's practice of increasing the costs of obtaining coverage beyond an economic rationality violates the VCFA's bar on "unfair practices."

60. Patriot's third coverage letter did not address any of the previous failures identified in Count II of the original complaint.

61. Patriot has fallen below the standards set forth in Vermont law for communicating with its insured. 8 V.S.A. § 4724. In particular, Patriot's investigation failed by:

> (M) failing to promptly provide a reasonable explanation on the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

8 V.S.A. § 4724(9)(M).

62. As a result of Patriot's actions, JLD was damaged.

## Claims for Relief

WHEREFORE, Plaintiff prays that judgment be entered in his favor for the following relief:

A. A declaration that coverage under the Insurance Policy exists;

B. Damages;

C. An order awarding attorneys' fees and costs; and

D. Such other and further legal and equitable relief as this Court deems just and proper.



76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

## JURY DEMAND

**Plaintiff demands trial by jury of all issues so triable.**

Dated:   Burlington, Vermont
         June 8, 2021

*/s/ Matthew B. Byrne*
Matthew B. Byrne, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
mbyrne@gravelshea.com
For Plaintiff