U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 DEC 17 AM 10: 24

CLERK
BY  Uw
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JLD PROPERTIES OF ST. ALBANS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PATRIOT INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | Case No. 2:20-cv-00134 |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**
(Doc. 33)

Plaintiff JLD Properties of St. Albans, LLC brings this action against Defendant Patriot Insurance Company seeking a declaratory judgment that coverage exists for damage to its property under an insurance policy issued by Defendant (Count I) and alleging violations of the Vermont Consumer Fraud Act (the "VCFA"), 9 V.S.A. § 2453 (Counts II and III).

On September 9, 2020, Plaintiff filed the original Complaint in this action. Defendant moved to dismiss the Complaint, and on May 21, 2021, the court issued an Opinion and Order granting Defendant's motion to dismiss and granting leave to amend. Plaintiff filed an Amended Complaint on June 8, 2021. On June 22, 2021, Defendant filed the instant motion to dismiss Plaintiff's Amended Complaint (Doc. 33). On July 8, 2021, Plaintiff opposed Defendant's motion, and on July 22, 2021, Defendant replied. A hearing was held on August 31, 2021, at which time the court took the pending motion under advisement.

Plaintiff is represented by Matthew B. Byrne, Esq. Defendant is represented by Anthony J. Antonellis, Esq.; Brendan L. Labbe, Esq.; and John E. Brady, Esq.

## I. Allegations in the Amended Complaint.

Plaintiff is a Vermont limited liability company that purchased an insurance policy from Defendant which "provides coverage for wind damage" (the "Policy"). (Doc. 32 at 2, ¶ 8.) In October 2017, a windstorm caused damage to a building owned by Plaintiff located in St. Albans, Vermont. The damage included "lifting of the roof and creating openings in the roof." *Id.* at ¶ 10. Defendant sent an adjuster, Alex Hill of Colonial Adjustment, to investigate the cause of the damage in 2017. Plaintiff fully cooperated with the investigation, including by providing Mr. Hill with access to the building and information about quotes for repairs.

Plaintiff alleges that Mr. Hill provided a report to Defendant but a copy was not provided to Plaintiff. Mr. Hill's investigation allegedly determined that wind had lifted and damaged the membrane roofing in the northwest corner of the roof. Defendant initially confirmed coverage for the wind damage and issued payments "for the temporary repairs and permanent replacement of the entire roof including the entire roof membrane." *Id.* at 4, ¶ 31.

In a July 13, 2018 letter, Joe Bernard, a Senior Claims Representative employed by Defendant, stated that "[a]fter a covered loss such as yours, your policy provides that we pay for the current repair/replacement value of your property, less depreciation for wear and tear." *Id.* at 5, ¶ 32 (internal quotation marks omitted). Plaintiff asserts that in sending this letter, "[Defendant] intended for [Plaintiff] to rely on its representations concerning coverage" and that Plaintiff did rely "on that determination of coverage to its detriment." *Id.* at 2, 5, ¶¶ 11, 34. Plaintiff further contends that its reliance was reasonable "given that [Defendant] had sent its own independent investigator and the conclusions of the investigator appeared to be reasonable." *Id.* at 5, ¶ 35.

On January 10, 2020, Plaintiff requested coverage under the Policy for additional repairs allegedly necessitated by the 2017 wind damage which it contends were "latent and not easily detected." (Doc. 32 at 6, ¶ 38.) Plaintiff asserts that "[o]nce it discovered the damage, [it] promptly reported the damage to [Defendant]." *Id.* Defendant hired "Ms. Evans" to conduct an investigation into the newly reported damage. *Id.* at 6, ¶ 40.

2

Plaintiff alleges that Ms. Evans made several mistakes and misstatements of fact in her investigation, including her conclusion that "the previous holes in the roof had no role in the damage"; her failure to "use contemporary evidence from 2017 to examine the true cause of the issue with the wall"; her statement that "only the South Wall had been repointed in 2015"; erroneously attributing certain statements to a witness; and mislabeling photos. *Id.* at 6-7, ¶¶ 42-43, 47. Plaintiff contends that "Ms. Evans's conclusions were contrary to the conclusions of Mr. Hill and were based on less evidence and erroneous evidence." *Id.* at 6, ¶ 44.

Defendant denied coverage in two letters which allegedly relied on investigative inaccuracies. In June of 2020, Plaintiff's insurance broker sent an email to Defendant explaining the alleged factual inaccuracies in its investigation; however, Defendant did not request additional information or conduct a new investigation.

After Plaintiff filed its original Complaint in this action, Defendant sent a third coverage letter in which it asserted a "suit limitation clause" defense. *Id.* at 3, ¶ 20. Plaintiff alleges that this defense is "part of a standard strategy to increase the costs of obtaining coverage so that rational economic actors will not pursue coverage to which they are entitled because the costs of obtaining that coverage exceeds the amount of damages available under the policy" and "allows [Defendant] to make profits that it is not otherwise entitled to the detriment of its insureds." (Doc. 32 at 3, ¶¶ 21-22.) Plaintiff asserts that Defendant's third letter fails to respond to the June 2020 email sent by its insurance broker. Plaintiff alleges that it "had relied on the coverage positions taken by [Defendant]. That reliance included spending valuable staff time investigating the claim and money spent on attorney's fees in evaluating the claims, communicating with the insurance company, and drafting the complaint." *Id.* at 4, ¶ 25.

With regard to Commercial Property, the Policy states in relevant part that:

No one may bring a legal action against [Defendant] under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

    2.    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Doc. 33-5 at 57.) Plaintiff's Complaint was filed on September 9, 2020, more than two years from "the date on which the direct physical loss or damage occurred." *Id.*

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v.*

4

*Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

### B. Whether Exhibit D to the Motion to Dismiss Plaintiff's Amended Complaint May be Considered.

Plaintiff contends that "the [c]ourt has no basis to take judicial notice of" the insurance policy attached as Exhibit D to Defendant's motion to dismiss because "the [c]ourt has no basis from the Complaint to assure itself that the policy that [Defendant] attaches to its [m]otion to [d]ismiss is the same policy that [Plaintiff] discusses in its [C]omplaint." (Doc. 34 at 14-15.) At oral argument, Plaintiff identified no factual basis for its belief that Exhibit D may not be the correct policy, acknowledged it possessed no other policy, and contended that it need not identify the contract under which it brings its breach of contract claim until summary judgment. *See* Fed. R. Civ. P. 11. The court disagrees. A plaintiff may not rely on an insurance policy in bringing suit and then contend the court may not consider that policy as integral to its complaint. *See Classic Laundry & Linen Corp. v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 4350610, at *3 (S.D.N.Y. June 30, 2017) (finding insurance policy integral to the complaint and considering it in the context of a suit limitation provision).

A document is "'integral'" to the complaint if the complaint "'relies heavily upon [the document's] terms and effect[.]'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "This generally occurs" when the incorporated material is a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* at 231 (internal quotation marks and citation omitted).

Although it is not attached to the Amended Complaint, the court will consider the insurance policy attached to Defendant's motion to dismiss as Exhibit D (Doc. 33-5) because it is incorporated by reference in the Amended Complaint and Plaintiff relied upon it in bringing the instant action.

5

Plaintiff's claim at oral argument, that an unidentified insurance policy which it does not possess may be the basis of its breach of contract claim, does not alter this conclusion. *See PB Ams. Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 253 (S.D.N.Y. 2010) (denying plaintiff's request to strike an insurance policy which it alleged defendants breached because the policy was integral "[b]y the very nature of the suit"). Plaintiff does not make this same argument in its brief, nor does there appear to be a good faith factual or legal basis to do so. *See Bd. of Managers v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 39 (E.D.N.Y. 2011) ("Arguments raised for the first time at oral argument are generally deemed waived.") (citation omitted). Although Plaintiff further argues that "a two-year limitation clause may preclude claims for a 2017 policy, [but] it would not preclude claims from a 2019 policy[,]" (Doc. 34 at 15), speculation that an unidentified policy in 2019 may provide coverage for a 2017 windstorm is untenable. *See Twombly*, 550 U.S. at 545 (holding that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level").

### C. Whether Plaintiff Plausibly Pleads a Violation of the Vermont Consumer Fraud Act.

Plaintiff argues that the court's prior decision dismissing Plaintiff's VCFA claims "is incorrect" because (1) a "determination of whether a claim is 'on the policy' is a fact intensive inquiry" that should not be undertaken until after discovery; and (2) Plaintiff's VCFA claims "are different from common law bad faith claim[s]" because they are based on the standards set forth in 8 V.S.A. §§ 4723, 4724. (Doc. 34 at 15-16.)

Defendant counters that Counts II and III of the Amended Complaint must be dismissed because there is no private right of action under 8 V.S.A. §§ 4723, 4724, and because the VCFA does not apply to insurance claims. Plaintiff concedes that there is no private right of action under 8 V.S.A. §§ 4723, 4724, but contends that it "can serve as the standard for conduct to determine the 'public policy' element of the 'unfair' prong of the Vermont Consumer Fraud Act." (Doc. 34 at 17.)

As the court explained in its May 21, 2021 Opinion and Order, the VCFA prohibits "unfair or deceptive acts or practices in commerce[.]" 9 V.S.A. § 2453(a).

> To establish a "deceptive act or practice" under the [V]CFA requires three elements: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product."

*Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014) (quoting *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (1998)). "Whether an act is 'unfair' is guided by consideration of several factors, including (1) whether the act offends public policy, (2) whether it is immoral, unethical, oppressive or unscrupulous, and (3) whether it causes substantial injury to consumers." *Id.* (internal quotation marks and citation omitted).

> To bring a private claim under the VCFA, the plaintiff must be a consumer who "contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453" or "who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 . . . or prohibited by any rule [or] regulation made pursuant to section 2453."

*Id.*

"Whether the Vermont Consumer Fraud Act applies to the insurance industry is an open question." *R.L. Vallee, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 431 F. Supp. 2d 428, 442 (D. Vt. 2006). In *Wilder v. Aetna Life & Casualty Insurance Co.*, the Vermont Supreme Court rejected the VCFA's application to insurance, holding that "the selling of an insurance policy is not a contract for 'goods or services' within the meaning of 9 V.S.A. [§] 2461[.]" *Wilder v. Aetna Life & Cas. Ins. Co.*, 433 A.2d 309, 310 (Vt. 1981). In 1985, the Vermont Legislature amended the VCFA's definition of "[g]oods" or "services" to include "intangibles" and "services of any kind." 9 V.S.A. § 2451a(2).

When presented with the question of whether the VCFA, as amended, applies to insurance, the Vermont Supreme Court has declined to address it. *See Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 10, 177 Vt. 90, 95, 858 A.2d 238, 243 (stating that "[p]laintiff and amicus curiae, the Vermont Attorney General, argue that *Wilder* is no longer good law after the 1985 amendments to the Consumer Fraud Act. We do not reach this argument."); *see also Fraser v. Concord Gen. Mut. Ins. Co.*, 2010 WL 11537929, at *3

7

(D. Vt. Mar. 24, 2010) (noting that the court would "[a]ssum[e] without deciding that Vermont's Consumer Fraud Act applies to insurance transactions"). The court need not decide whether the VCFA applies to insurance because even "[i]n those states that recognize Consumer Fraud Act applicability to insurance transactions, a mere coverage dispute is insufficient to show consumer fraud." *Greene*, 2004 VT 67, ¶ 16, 177 Vt. at 97, 858 A.2d at 244; *see also Fine Paints of Eur., Inc. v. Acadia Ins. Co.*, 2009 WL 819466, at *8 (D. Vt. Mar. 24, 2009) (holding that "a 'fairly debatable' coverage dispute [] is not actionable as consumer fraud").

In its Amended Complaint, Plaintiff again alleges that Defendant engaged in unfair practices because it declined to provide coverage for additional repairs based on an allegedly inaccurate investigation, failed to promptly explain its denial, and asserted a suit limitation clause defense after Plaintiff filed its original Complaint. Plaintiff points to several mistakes in Defendant's investigation and its failure to correct those alleged mistakes when Plaintiff identified them. At oral argument, Plaintiff conceded that it did not assert a claim of bad faith. *See Murphy v. Patriot Ins. Co.*, 2014 VT 96, ¶¶ 11-16, 197 Vt. 438, 442-45, 106 A.3d 911, 915-917 (rejecting proposition that a bad faith claim may be predicated on a negligent or inadequate investigation); *see also Gade v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 7306433, at *16 (D. Vt. Nov. 19, 2015) (finding that "[a]n insurance company has no obligation to perform a flawless investigation or exercise perfect judgment in order to defeat a bad faith claim"). Plaintiff's claims are therefore "merely a disguised attempt to resolve a dispute as to liability." *Greene*, 2004 VT 67, ¶ 28, 177 Vt. at 102, 858 A.2d at 248.

Because Plaintiff's VCFA claims in Counts II and III are predicated on an insurance coverage dispute that cannot serve as the basis for a VCFA claim, Defendant's motion to dismiss these claims is GRANTED.

**D.    Whether the Suit Limitation Provision is Ambiguous.**

Defendant seeks dismissal of Plaintiff's Amended Complaint because the claims set forth therein are time-barred by the Policy's suit limitation provision. Plaintiff counters that the Policy is ambiguous "because it does not address the issue of whether

8

latent damage to a building may be submitted promptly after it is discovered[,]" (Doc. 34 at 5), and thus it should be interpreted to include a "discovery rule." *Id.* at 6.

"An insurance contract is ambiguous if it is reasonably or fairly susceptible of different constructions." *N. Sec. Ins. Co. v. Doherty*, 2009 VT 27, ¶ 9, 186 Vt. 598, 599, 987 A.2d 253, 256 (internal quotation marks and citation omitted). Under Vermont law, courts "interpret disputed terms in an insurance policy according to their plain, ordinary and popular meaning and are guided by a review of the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." *State Farm Mut. Auto. Ins. Co. v. Colby*, 2013 VT 80, ¶ 11, 194 Vt. 532, 536, 82 A.3d 1174, 1178 (internal quotation marks, alteration, and citation omitted).

Here, the Policy clearly and unambiguously prohibits legal action against Defendant unless "[t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Doc. 33-5 at 57); *see Brillman v. New England Guar. Ins. Co.*, 2020 VT 16, ¶ 20, 211 Vt. 550, 558, 228 A.3d 636, 641 (holding that "the phrase 'date of loss' as used in this policy unambiguously means the date of the occurrence giving rise to coverage"). The Policy does not create an exception for later-discovered damages and the omission of such an exception does not create an ambiguity; it instead makes clear no exception exists. *See Brotherhood of Locomotive Eng'rs & Trainmen v. Long Island R.R. Co.*, 340 F. App'x 727, 729 (2d Cir. 2009) (rejecting argument that a decision "is ambiguous in that it does not address whether claims covered by several prior adjustment board awards are exempted"); *Varner v. State Farm Fire & Cas. Co.*, 2017 WL 6539269, at *3 (E.D. Mich. Dec. 21, 2017) (rejecting a discovery rule exception to the statute of limitations because "[t]he [p]olicy plainly requires that the insured commence the action 'within one year after the date of loss or damage'" and did not "provide that the action may be commenced within one year of the insured's discovery of the loss or damage").

Although Vermont law recognizes in other contexts that "the statute of limitations begins to run 'only when a plaintiff discovers or reasonably should discover the injury, its

9

cause, and the existence of a cause of action[,]'" *State v. Atl. Richfield Co.*, 2016 VT 61, ¶ 32, 202 Vt. 212, 225, 148 A.3d 559, 567 (emphasis omitted), it has never applied this rule to an unambiguous suit limitation provision. Instead, the Vermont Supreme Court has ruled that "the discovery rule applies whenever a limitations period does not set forth a determinable fact that triggers accrual" because "this requires additional factual inferences to determine the date on which the action accrued – namely, when the plaintiff discovered or should have discovered his or her injury." *Pike v. Chuck's Willoughby Pub, Inc.*, 2006 VT 54, ¶ 16, 180 Vt. 25, 32-33, 904 A.2d 1133, 1138.[1] Where, in context, the coverage triggering event took place on a date certain and the Policy uses this date for the commencement of the limitations period, no discovery rule is necessary.

Because the suit limitation provision at issue in this case unambiguously requires that suit be brought within two years of the "date on which the direct physical loss or damage occurred[,]" (Doc. 33-5 at 57), it sets forth a "determinable fact" triggering accrual, and the discovery rule does not apply. *Pike*, 2006 VT 54, ¶ 16, 180 Vt. at 32, 904 A.2d at 1138; *see also Toledo v. State Farm Fire & Cas. Co.*, 810 F. Supp. 156, 160 (E.D. Pa. 1992) (holding that, under Pennsylvania law, "the discovery rule does not apply" where a suit limitation clause was "unambiguous and refers to a definitely established event") (internal quotation marks omitted); *Nurse v. Omega U.S. Ins., Inc.*, 38 N.E. 3d 759, 764 (Mass. Ct. App. 2015) (declining to apply the discovery rule to a suit limitation provision because "[t]he phrase 'loss occurred' simply does not rest on a determination of when the loss was discovered").

Plaintiff's reliance on *Prudential-LMI Commercial Insurance v. Superior Court* for a contrary approach is misplaced. In that case, the California Supreme Court, interpreting a statutory suit limitation provision, held that the term "'inception of the loss' should be determined by reference to reasonable discovery of the loss and not necessarily turn on the occurrence of the physical event causing the loss." *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 686 (1990). Because the insured was unaware of any

---

[1] In *Pike*, the Vermont Supreme Court cited the decedent's death in a wrongful death action as constituting a date certain, for which the discovery rule is inapplicable.

loss, the court applied a "delayed discovery rule" under which

> [t]he insured's suit on the policy will be deemed timely if it is filed within one year after "inception of the loss," defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered.

*Id.* at 686-87. In this case, Plaintiff contends the windstorm occurred in October of 2017 and that Defendant provided coverage for Plaintiff's losses in response to Plaintiff's request, which clearly indicates Plaintiff was aware of a loss at that time. Although at oral argument Plaintiff contended this is a "progressive loss case," no such allegation is contained in its Amended Complaint. *See Bd. of Managers*, 801 F. Supp. 2d at 39 ("Arguments raised for the first time at oral argument are generally deemed waived.") (citation omitted).

Because the Policy unambiguously requires that suit be brought within two years of the date that direct physical loss or damage occurred, the discovery rule does not apply and Plaintiff's claims are time-barred unless this provision of the Policy is unenforceable.

E.     **Whether the Policy's Suit Limitation Provision is Unenforceable.**

If the court finds the Policy is clear and unambiguous, Plaintiff asks the court to find it unreasonable and therefore unenforceable. "Generally, insurance contracts may contain provisions shortening the period for filing suit if the shorter period is consistent with any applicable statute, is reasonable, is clear and unambiguous, and provides adequate notice of the reduction." *Brillman*, 2020 VT 16, ¶ 9, 211 Vt. at 554, 228 A.3d at 638-39 (internal quotation marks and citation omitted).

Under Vermont law:

> A policy of fire, life, accident, liability, or burglary insurance, or an indemnity, surety, or fidelity contract or bond issued or delivered in this State by an insurance company doing business herein shall not contain a condition or clause limiting the time of commencement of an action on such policy or contract to a period less than 12 months from the occurrence of the loss[.]

8 V.S.A. § 3663; *see also Greene*, 2004 VT 67, ¶ 18, 177 Vt. at 98, 858 A.2d at 245 (holding that "[t]he applicable statute prohibits such limitation clauses only if they set a

11

time limit less than a year from the date of the loss"). Although the statute of limitations for property damage under Vermont law is three years after the cause of action accrues, no Vermont court has found a two-year suit limitation provision in an insurance contract offering coverage for property damage unreasonable or contrary to public policy. *See* 12 V.S.A. § 512; *Brillman*, 2020 VT 16, ¶ 17, 211 Vt. at 557, 228 A.3d at 640 (upholding a suit limitation provision prohibiting suit unless "the action is started within one year after the date of loss").

Plaintiff contends that application of the suit limitation provision is unreasonable in the circumstances of this case because Defendant initially confirmed coverage for the damage caused by the windstorm and because Plaintiff could not immediately detect the later-discovered damage. Were this court to adopt this approach, it would materially amend the Policy provision in question. *See Rounds v. Malletts Bay Club, Inc.*, 2016 VT 102, ¶ 16, 203 Vt. 473, 479, 157 A.3d 1101, 1106 (stating that the Supreme Court of Vermont "assume[s] that parties included contract provisions for a reason, and [it] will not embrace a construction of a contract that would render a provision meaningless") (internal quotation marks and citation omitted). An insured, in turn, could extend a suit limitation provision indefinitely by claiming later-discovered damages. Although such coverage may be available pursuant to a different type of insurance policy, it is clearly not offered by the Policy which unambiguously sets forth a time limit for filing suit of two years.

The court cannot interpret the Policy so as to afford Plaintiff a better bargain than it made. *Brillman*, 2020 VT 16, ¶ 19, 211 Vt. at 558, 228 A.3d at 641 ("However, the parties' expectations cannot control over unambiguous language and we will not rewrite unambiguous terms in a policy to grant one party a better bargain than the one it made.") (internal quotation marks and citation omitted). Plaintiff's contention that the Policy is unreasonable and unenforceable is thus without merit.

**F. Whether the Doctrines of Waiver and Estoppel Apply.**

In the alternative, Plaintiff argues that Defendant has waived and should be estopped from asserting the suit limitation provision because Defendant initially

12

confirmed coverage for damage caused by the 2017 windstorm but reversed its position when Plaintiff sought coverage for additional repairs related to the storm several years later. In such circumstances, Plaintiff contends it could not have known that it would need to file suit within the two-year limitations period.

The Vermont Supreme Court has held that "the doctrines of waiver and estoppel can mitigate the harsh results of enforcing" suit limitation provisions. *Id.*, 2020 VT 16, ¶ 25, 211 Vt. at 560, 228 A.3d at 642. "Equitable estoppel applies in cases where, for example, the defendant lulls the plaintiff into not filing suit with assurances that she will settle the case." *Ellul*, 774 F.3d at 802 (citation omitted). Accordingly, "[i]f conduct or inaction on the part of the insurer is responsible for the insured's failure to comply with time limitations, injustice is avoided and adequate relief assured, without doing violence to the plain language of the insurance contract, by resort to traditional principles of waiver and estoppel." *Brillman*, 2020 VT 16, ¶ 25, 211 Vt. at 560, 228 A.3d at 642 (quoting *Fed. Deposit Ins. Co. v. Hartford Accident & Indem. Co.*, 97 F.3d 1148, 1151 (8th Cir. 1996)). "To invoke equitable estoppel, a plaintiff must show that: '(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Ellul*, 774 F.3d at 802 (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).

Plaintiff alleges that it reasonably relied upon Defendant's confirmation of coverage for the 2017 wind damage to its detriment and that by confirming coverage for the initial damage, Defendant was bound to confirm coverage thereafter. It does not, however, point to any statement by Defendant representing that it would do so. Because Plaintiff does not plausibly plead that Defendant made a "definite misrepresentation of fact" that Plaintiff reasonably relied on to its detriment, it has not alleged an equitable estoppel claim. *Id.*; *see Twombly*, 550 U.S. at 570.

Plaintiff further argues that equitable tolling prevents application of the suit limitation provision. Under Vermont law, "[e]quitable tolling applies either where the defendant is shown to have actively misled or prevented the plaintiff in some

13

extraordinary way from discovering the facts essential to the filing of a timely lawsuit, or where the plaintiff has timely raised the same claim in the wrong forum." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 11, 186 Vt. 605, 610, 987 A.2d 258, 264. Plaintiff does not allege that Defendant prevented it from discovering the allegedly latent damage, nor plausibly pleads that Defendant misrepresented its coverage position. Equitable tolling thus does not apply.

Finally, Plaintiff contends that Defendant waived the suit limitation provision by providing coverage for the 2017 wind damage and "by failing to assert [the suit limitation] clause in its previous coverage letters[.]" (Doc. 9 at 5.) Under Vermont law, "[a] waiver is a voluntary relinquishment of a known right." *Anderson v. Coop. Ins. Cos.*, 2006 VT 1, ¶ 10, 179 Vt. 288, 291, 895 A.2d 155, 159 (citing *Green Mountain Ins. Co. v. Maine Bonding & Cas. Co.*, 608 A.2d 1160, 1165 (1992)). While "an insurer waives additional defenses that are not raised or reserved in an initial denial of coverage[,]" this does not bar the application of a suit limitation provision. *Progressive Ins. Co. v. Brown ex rel. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 391-92, 966 A.2d 666, 668. A suit limitation provision is not a denial of coverage but the time period in which a suit regarding coverage must be filed. *See Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, 2014 WL 6997524, at *8 (W.D.N.Y. Dec. 10, 2014) (noting that the court was required to address "language in the contractual suit limitation provision . . . [which] could not be anymore clear[] suit must be filed within two years from the date the loss occurred"). To require an insurance company to assert a suit limitation defense before suit has been filed defies common sense.

Because Plaintiff has not plausibly pled equitable estoppel, equitable tolling, or waiver, Defendant's motion to dismiss the Amended Complaint as time-barred must be GRANTED.

14

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss. (Doc. 33.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th day of December, 2021.

Christina Reiss, District Judge
United States District Court